PICKWICK FARMS, INC., Appellee,

v.

OHIO STATE RACING COMMISSION, Appellant.

[Cite as *Pickwick Farms, Inc. v. Ohio State Racing Comm.* (1994), 96 Ohio App.3d 302.]

Court of Appeals of Ohio,
Franklin County.

No. 94APE01-30.

Decided Aug. 2, 1994.

*Walter & Haverfield* and *James D. Wilson,* for appellee.

*Lee Fisher,* Attorney General, and *Sheryl D. Erlichman,* for appellant.

---

EDWARD J. MAHONEY, Judge.

Appellant, Ohio State Racing Commission, appeals the determination of the court of common pleas that the terms "breeding season" and "stud season" in R.C. 3769.082(D), R.C. 3769.085, and Ohio Adm.Code 3769–15–34 mean the period from February 1 through July 31 of a given year. Finding no error in the definition of those terms as found by the trial court, we affirm.

Appellee, Pickwick Farms, Inc., breeds, raises, and races standardbred horses in Ohio and elsewhere. Ohio conducts stakes races for colts and fillies sired by standardbred stallions but limits eligibility for the races to offspring of stallions registered with the racing commission. To be registered, the stallions must, under R.C. 3769.082(D), regularly stand "the entire stud season in Ohio"; and under R.C. 3769.085(B), the stallion must stand in Ohio for "the entire breeding season of the year the colt or filly was conceived." Under Ohio Adm.Code 3769–15–34, a stallion standing for the first time in Ohio "must be registered prior to the time he first services a mare that particular breeding season." Thus, these provisions require that the colts or fillies be sired in Ohio by stallions which have spent the entire stud season/breeding season in Ohio.

Virtually all standardbred horses are bred in the United States between mid-February and mid-July. In the southern hemisphere, the breeding season is about November through January. Pickwick Farms, Inc. desires to ship certain stallions to Australia or New Zealand for breeding with mares during the southern hemisphere breeding season after the stallions have bred in Ohio in February through July, and to ship to Ohio from those countries stallions for the purpose of breeding in Ohio in February through July, without the Ohio offspring of such stallions losing eligibility to participate in Ohio's races. The practice of breeding stallions in two breeding seasons in the same calendar year is called "double-breeding."

The Ohio State Racing Commission took the position that stallions which were double-bred could not be registered for Ohio races notwithstanding that the stallions were bred in Ohio in February through July. In short, the commission's position is, that to be registered in Ohio, the stallions must not breed outside Ohio in the same calendar year. Pickwick Farms, Inc. filed for a declaratory judgment that the terms "stud season" and "breeding season," as used in the statutes and code, mean mid-February through mid-July, thus allowing "double-breeding." Trial was held and the court ruled in Pickwick Farms, Inc.'s favor.

The following assignments of error are set forth in appellant's brief:

"A. The trial court failed to ascertain the legislative intent and erred in declaring that the terms 'breeding season' and 'stud season' as used in R.C. 3769.082(D), R.C. 3769.085, and O.A.C. 3769–15–04 [sic] mean the first of February until the end of July to allow Ohio registered stallions to stand stud during breeding seasons in different countries in the same calendar year.

"B. The trial court erred in failing to consider the Ohio State Racing Commission's consistent administration of R.C. 3769.082(D), R.C. 3769.085, and O.A.C. 3769–15–04 [sic] for the past twenty years."

The racing commission does not dispute the trial court's determination that the terms "stud season" and "breeding season" are synonymous. The trial court properly found that the terms are ambiguous. See State ex rel. Cunningham v. Indus. Comm. (1987), 30 Ohio St.3d 73, 76, 30 OBR 176, 179, 506 N.E.2d 1179, 1181; R.C. 1.49.

The racing commission asserts that the rationale of the legislature was to "enhance the standardbred industry in the state of Ohio by attracting with lucrative sire stakes race purses top quality horses * * * and to protect Ohio's horse breeding industry from loss of business to other states that have similar stakes race programs."

Since well-nigh all standardbred horse breeding takes place in the United States in February through July, we cannot see how the definition of "stud season/breeding season" as meaning February through July will work to harm Ohio racing interests. If the breeder wishes its colts and fillies to participate in Ohio's races, then the stallions must breed only in Ohio during the breeding season. This ensures that the stallions will not breed in other states, thus keeping the offspring from other states' races.

The trial court thoroughly considered the issues and stated as follows:

"The Court finds that no guidance can be gleaned from the legislative purpose and intent * * *. In order to be registered, the stallion must stand in Ohio the entire stud or breeding season. * * * [N]owhere in Title 37 are the terms 'breeding season' or 'stud season' expressly defined. * * * [A]n express defini-

tion was not written into the statute due to the fact that the definition was so widely accepted as being the middle of February through the middle of July. Moreover, the legislature chose to use the word 'season', instead of the word 'year.' It is likely that the terms 'stud season' and 'breeding season' were written into the statutes because horses, particularly mares, are seasonal breeders. It is well-accepted within the Standardbred community that customarily the breeding season of Standardbred horses in Ohio runs from the 15th of February through the 15th of July each year, and the breeding season in southern hemisphere [countries] * * * opens in September and closes in January.

"Double breeding was not a concept considered at the time of the drafting of the statutes. Insofar as the intent of Ohio's General Assembly is to prevent horses breeding elsewhere, it can be presumed that they are referring to northern hemisphere breeding. * * * [I]t would not want a stallion to breed in states of Ohio and Kentucky in the same year. Since the southern hemisphere breeding season does not coincide with Ohio's breeding season, this Court cannot say that double breeding defeats the intent of R.C. § 3769.082 or R.C. § 3769.085.

"Further, double breeding neither promotes nor prevents breeding in other states since the breeding in all the northern hemisphere takes place virtually at the same time, from February through July."

We adopt the reasoning of the trial court. Further, as the Standardbred Development Fund Committee voted in October 1992 to prohibit "double-breeding," and the Ohio State Racing Commission has never formally specified that the breeding season in Ohio is the entire calendar year, we do not discern any "twenty-year" long position by the racing commission that "double-breeding" is prohibited.

The assignments of error are overruled and the judgment of the trial court is affirmed. As Pickwick Farms, Inc. aptly notes, the General Assembly is free to adopt the position of the Ohio State Racing Commission should that be the position of the legislature.

*Judgment affirmed.*

JOHN C. YOUNG and PETREE, JJ., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.